# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-1366

M. Stephen Peters,

    Plaintiff

v.

Gary Lee Bryan,
Janel K. Bryan,
Auto Source, LLC,
Brad Hunt, as Trustee of The Bryan Family Trust,

    Defendants.

## ORDER

Miller, J.

    This is an appeal by Debtor/Appellant Gary Lee Bryan, Janel K. Bryan, Auto Source, LLC, and Brad Hunt, as Trustee of The Bryan Family Trust, of the June 4, 2009 order and judgment of the United States Bankruptcy Judge Sidney B. Brooks in Bankruptcy Court Adversary Proceeding Case No. 08-01102-SBB (ECF No. 95). I have considered the parties' written arguments, as well as the evidence contained in the record on appeal from the Bankruptcy Court. No oral argument is necessary because the facts and legal arguments are adequately presented in the briefs and the record. Oral argument would not aid my decisional process. For the reasons set forth below, I will affirm in part and reverse and remand in part for proceedings consistent with this opinion.

BACKGROUND

This case concerns the administration of a trust established by the Debtor Gary Lee Bryan ("Bryan"), and his wife, Janel K. Bryan ("Mrs. Bryan) for the benefit of their two children and themselves.

The appellants claim that the Bankruptcy Court erred in entering judgment in favor of Trustee M. Stephen Peters in the adversary proceeding. Judge Brooks determined that the Bryan Family Trust ("Trust") was both an invalid spendthrift trust and sham trust under Colorado state law. Mem. Op. & Order at 30, 33; ECF No. 89. He concluded that the interest in the Trust assets, including the real property located at One Finch, Littleton, Colorado, certain personal property conveyed to the Trust on or about June 1, 2001, and the proceeds from the sale of the Range Rover were property of the Trust estate ("Estate") under 11 U.S.C. § 541(a)(1). *Id.*

The Trust Agreement provides for the transfer to the Trust of "One Finch, Littleton Colorado, as furnished" on July 1, 1999 by Bryan and Mrs. Bryan. The Bryans did not own the property on that date, however. Joint Pretrial Statement, Stip. Facts (hereinafter, "Stip. Facts") ¶ 15, ECF No. 72. On June 30, 2000, the Bryans purchased One Finch, Littleton Colorado ("One Finch Property") for $755,000. Compl., Ex. 2, ECF No. 1-2. Bryan and Mrs. Bryan conveyed the One Finch Property to the Trust by a quitclaim deed, which is dated January 11, 2001. *See* Quitclaim Deed, ECF No. 1-3. The quitclaim deed was executed on May 3, 2001 and recorded on May 9, 2001. *Id.*

At the time of conveyance, the One Finch Property was encumbered by a first deed of trust in favor of Washington Mutual Bank, securing a $203,000 loan to the Bryans. Stip. Facts ¶ 18, ECF No. 72. The grantors under the first deed of trust were

Bryan and Mrs. Bryan. *Id.* The Trust was not a party to the first deed of trust or the underlying loan agreement and never became one. *Id.* Taking the loan into account, the equity in the One Finch Property at the 2001 conveyance to the Trust was $552,000. Memo. & Op. at 6–7, ECF No. 95.

On June 1, 2001, Bryan and Mrs. Bryan sold all of the household goods and furnishings located in the One Finch Property to the Trust for $10.00. Compl. ¶ 26.[1] Bryan stated that he did not purchase any other household goods and furnishings thereafter. Compl. ¶ 27, ECF No. 1, Am. Answer ¶ 27, ECF No. 60. However, he scheduled "household goods and furnishings at a value of $1,920 in Schedule B to his Voluntary Petition, his amended Schedule B filed August 28, 2007, and his amended Schedule B filed December 10, 2007. *See* Compl. ¶ 27, Am. Answer ¶ 27.

The Trust leased the One Finch Property to the Bryans under two separate lease agreements but did not receive consistent rent payments. Mrs. Bryan and the Trust entered a residential lease on June 1, 2001. Pursuant to the lease, she was to pay monthly rent in the amount of $1,920.87. No deposits were ever made to the Trust account in that amount. Mrs. Bryan Tr. at 65, l. 7–66, l. 10. Periodically, deposits were made to the Trust in the amounts of $2,000 or $2,500. *Id.* Under a second lease, the Bryans were to pay the Trust $3,277 in rent on a monthly basis. No deposits were ever made to the Trust account in that amount, either.

On February 21, 2003, the Trust conveyed the One Finch Property to Bryan and Mrs. Bryan by quitclaim deed. Ex. 4, ECF No. 1-4. On the same day, the Bryans

---

[1] Defendants did not respond to this assertion; therefore, Defendants admit the same.

refinanced the property through Washington Mutual Bank.  Ex. 5, ECF No. 1-5.  The existing obligation to Washington Mutual Bank was paid from the proceeds of the refinance and Mrs. Bryan took the $46,168.15 that remained from the $250,000 refinance loan, after this payment was made.  *Id.*  The Trust did not receive any of the proceeds from the refinance.  The transaction reduced the equity in the One Finch Property to $505,000.  Compl. ¶ 34 & Am. Answer ¶ 34.  That same day, Bryan and Mrs. Bryan re-conveyed the One Finch Property to the Trust by quitclaim deed.  Ex. 6, ECF No. 1-6.

On June 16, 2003, Bryan borrowed $250,000 from Vectra Bank.  Compl. ¶ 35 & Am. Answer ¶ 35.  That same day, the Trust granted Vectra Bank a second deed of trust against the One Finch Property to secure Bryan's repayment of the loan.  Compl. ¶ 36 & Am. Answer ¶ 36.  Also on that day, the Trust's trustee (Mr. Hunt) executed a Trust Certificate (Trust Cert., ECF No. 1-7) granting the Trustee unlimited authority to pledge any and all Trust assets as security for any indebtedness of Bryan.  *Id.*  The Trust Certificate "shall be continuing, shall remain in full force in [sic] effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender. . . ."  *Id.*  The Trust Certificate has never been revoked.  Tr. 165, l. 20–166, l. 4,  ECF No. 123.

Bryan made a $250,000 loan to Scientific Cylinder Corporation or its related entity, Scientific Cylinder Corporation, with the proceeds of the June 16, 2003 loan.  Compl. at ¶ 38; Am. Answer ¶ 38.  Bryan claims that the $250,000 Scientific Cylinder transaction was the only financial deal he directed to be made through the Trust.  Tr. at 167, ll. 8–13, ECF No. 123.  On July 18, 2003, Bryan assigned all his right, title and

interest in the Scientific Cylinder note to the Trust. Compl. ¶ 39, Am. Answer ¶ 39.

On January 25, 2005, the Trust again conveyed the One Finch Property to Mrs. Bryan by quitclaim deed. Stip. Facts ¶ 21, ECF No. 72; Ex. 8, ECF No. 1-8. On that date, the loans secured by liens against the One Finch Property were refinanced through Vectra Bank. Stip. Facts ¶ 22. Bryan and Mrs. Bryan borrowed $560,000 from Vectra Bank, which provided the money to pay off the Washington Mutual Bank loan and the second deed of trust to Vectra Bank. *Id.* Mrs. Bryan received $49,002.45 from the refinance. *Id.* at ¶ 24; *see also*, ECF No. 1-9. Neither Bryan nor the Trust received any money from the transaction. Compl. ¶ 45; Am. Answer ¶ 45; Stip. Facts ¶ 25, ECF No. 72. With the increase of indebtedness secured by the One Finch Property after the January 2005 refinance, the equity in it was $195,000. Memo. & Ord at 12. Mrs. Bryan re-conveyed the One Finch Property to the Trust by quitclaim deed. Compl. Ex. 11; ECF No. 1-11; Stip. Facts ¶ 26, ECF No. 72. Mrs. Bryan reported to Mr. Hunt that the main purpose of the January 2005 refinance was "to remove the second deed of trust held by Vectra Bank." *Id.* at ¶ 36; Mrs. Bryan letter of May 11, 2005. ECF No. 1-16.

On May 9, 2005, the Trust conveyed the One Finch Property to Bryan and Mrs. Bryan by quitclaim deed, once again. Stip. Facts ¶ 27, ECF No. 72. That day, Bryan and Mrs. Bryan obtained a home equity line of credit in the amount of $55,000 from Vectra Bank. *Id.* at ¶ 28. The Bryans reconveyed the One Finch Property to the Trust on May 9, 2005. *Id.* at ¶ 29. On May 13, 2005, Mrs. Bryan received $53,969 from the transaction. *Id.* at ¶ 33; Settlement Statement, ECF No. 1-15. As a result of the increase in indebtedness secured by the One Finch Property, equity in the property was reduced to $140,000. Mem. & Order at 15.

5

Another asset of the Trust at issue is a 2003 Range Rover motor vehicle, which was purchased in 2002. Bryan paid for the vehicle with cash and trade-in credit from two vehicles he owned and then transferred the vehicle to the Trust. Stip. Facts ¶ 39, ECF No. 72. In 2003, the Range Rover was, evidently, stolen but was recovered in Hempstead, New York and returned to the Trust with the VIN tags removed. *Id.* at ¶¶ 41–42. Auto Source, LLC sold the vehicle in June 2006 for $30,488. *Id.* at ¶ 44.

Bryan filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code on October 3, 2005, only five months after the home equity line of credit was obtained on May 9, 2005. On November 2, 2006, the case was converted from Chapter 13 to Chapter 7. Stip. Facts ¶ 8. Plaintiff M. Stephen Peters was appointed as interim Chapter 7 trustee on the same day (*id.* at ¶ 9) and he became the permanent Chapter 7 trustee ("Trustee") upon the conclusion of the February 2, 2007 Meeting of Creditors. *Id.* at ¶ 11.

## ADVERSARY PROCEEDING

On January 31, 2008, Trustee filed an adversary proceeding making thirteen claims for relief (Case No. 08-1102). *See* Compl., ECF No. 1. He claimed that the Trust was created with fraudulent intent to remove Bryan's assets from the reach of creditors; that the Trust was void under Colorado law because Bryan was both a trust settlor and beneficiary with substantial control over the disposition of the Trust assets; that certain transfers of Trust property were fraudulent transfers in violation of 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 548(a)(1)(B) and the Colorado fraudulent transfer law (C.R.S. § 38-8-105) (Compl. at ¶¶ 82–139; ECF No. 1); and he sought remedies of turnover and an accounting of Trust property, imposition of a constructive trust, and

authorization to sell Trust property. *Id.* at ¶¶ 74–77.[2]

Bryan moved for summary judgment on Plaintiff's fraudulent transfer claims (the Fourth through Eleventh Claims) based on the expiration of the statute of limitations. Mot. for Summ. J., ECF No. 30. The Bankruptcy Court denied the Motion. Order, ECF No. 33. Upon Bryan's Motion for Reconsideration of Order Denying Motion for Summary Judgment (ECF No. 76), the Court granted summary judgment in favor of Bryan on the Fourth through Eleventh Claims because the two-year statute of limitations for fraudulent transfer had run prior to Plaintiff's having filed his complaint. Order, ECF No. 88.

In the adversary proceeding, Judge Brooks found that Bryan and Mrs. Bryan each own an equal, undivided one-half interest in the One Finch Property as tenants in common (Memo. & Op. at 30; ECF No. 95); that Bryan's own assets were used to purchase the Range Rover, and therefore, the Estate owns 100% interest in the proceeds from its sale (*id.* at 31); that the assets of the Trust are assets of the Estate; that real property known as One Finch Property "as furnished" transferred to the Trust on or about June 1, 2001 and a Range Rover vehicle was to be turned over to the Trustee; and that imposition of a constructive trust was appropriate. He granted the Trustee the authority to sell the Trust property turned over pursuant to 11 U.S.C. § 363; and ordered that the Trustee could offset the amount of the Judgment against Vectra

---

[2]The Bankruptcy Court entered default judgment against Vectra Bank on Plaintiff's Eighth Claim for Relief (Fraudulent Transfers—11 U.S.C. § 548(a)(1)(A)—Defendants Janel Bryan and Vectra Bank) and Ninth Claim for Relief (Fraudulent Transfers—11 U.S.C. § 548(a)(1)(B)—Defendants Janel Bryan and Vectra Bank) in the amount of $52,001.23 (ECF No. 13). Vectra Bank is not a party to this appeal.

Bank against any sum to be paid to Mrs. Bryan from the sale of the real property. *Id.*

The court turned over the One Finch Property and the Range Rover Proceeds to the Estate. The court also imposed a constructive trust against the One Finch Property and the proceeds from the sale of the Range Rover (*see id.* at 32), and entered judgment in favor of Trustee and against Defendants on the First Claim for Relief (the Trust is a sham trust and is property of the Estate), the Second Claim for Relief (the One Finch Property must be turned over to the Estate), the Third Claim for Relief (the Range Rover sale proceeds of $30,488 must be turned over to the Estate), Twelfth Claim for Relief (imposing a constructive trust on the Trust property), and the Thirteenth Claim for Relief (authority to sell the Trust property). *See id.* This appeal followed.

## JURISDICTION

Jurisdiction over the appeal is proper pursuant to 28 U.S.C. § 158(a)(1).

## STANDARD OF REVIEW

The district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the bankruptcy court's ruling. Bankr. R. 8013. I may set aside the bankruptcy court's findings of fact only if they are clearly erroneous. *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 138 (10th Cir. 1988). Its conclusions of law, however, are subject to *de novo* review. *Id.* Mixed questions of fact and law involving primarily legal issues are reviewed *de novo*; mixed questions involving primarily factual considerations are reviewed under the clearly erroneous standard. *In re Wes Dor Inc.*, 996 F.2d 237 (10th Cir. 1993). Legal conclusions drawn from facts are reviewed *de novo*. *In re Golf Course Builders Leasing, Inc.*, 768 F.2d 1167, 1169 (10th Cir. 1985).

DISCUSSION

Bryan raises five issues on appeal:

I. Whether the Bankruptcy Court erred in concluding that the Trust is not a valid spendthrift trust when the claim was not pled in the Complaint or tried with the express or implied consent of the parties.

II. Whether the Bankruptcy Court erred in concluding that the Trust is not a valid spendthrift trust when the issue was not included in the Pretrial Statement of Claims and Defenses.

III. Whether the Bankruptcy Court erred in concluding that the Trust as a whole is invalid under Colorado law because the spendthrift clause contained therein allegedly is not enforceable.

IV. Whether the Bankruptcy Court erred in concluding that the imposition of a constructive trust as a remedy was correct, when all fraudulent transfer claims had been denied on summary judgment; and

V. Whether the Bankruptcy Court erred in concluding that Plaintiff is entitled to offset a judgment of $52,001.23 allegedly owed by Mrs. Bryan against any funds to be distributed to her, when the referenced judgment was entered against Vectra Bank rather than Mrs. Bryan. *See* Opening Br. at 1–2. ECF No. 11. [3]

---

[3] Bryan argues that, even if the spendthrift clause is deemed unenforceable, the Trust should not be ruled invalid. Bryan concedes that this argument was not raised at trial and cannot be raised for the first time on appeal. *See In re Walker*, 959 F.2d 894, 896 (10th Cir. 1992). Bryan is correct. Accordingly, I do not consider this argument on appeal

I. Whether the Bankruptcy Court erred in concluding that the Trust is not a valid spendthrift trust when the claim was not pled in the Complaint or tried with the express or implied consent of the parties.

The scope of estate property is "broad and encompassing." *In re Alagna*, 107 B.R. 302, 307 (Bankr. D. Colo. 1989). It "embraces all legal and equitable interests of the debtor . . . as of commencement of the case. . . and includes, at least initially, virtually all non-exempt and exempt property." *Id.* An exception is provided by 11 U.S.C. § 541(c)(2), which provides: "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable under" the Bankruptcy Code. *Id.* In Colorado, only trusts enforceable under state law as spendthrift trusts fall within the exception and are excluded from the assets of a bankruptcy estate. *See In re Cohen*, 8 P.3d 429 (Colo. 1999). Accordingly, whether the Trust assets are the property of the Estate turns on whether the Trust is a valid and enforceable spendthrift trust. If it is not, it is the property of the Estate. *See, e.g.*, *Brasser v. Hutchison*, 37 Colo. App. 528, 549 P.2d 801 (1976).

Bryan argues that the pleadings and the pretrial statement do not make it clear that Trustee is claiming that the Trust was a spendthrift trust and that it was invalid due to Debtors' actions.

    A.    <u>Pleading Invalidity of Trust</u>

Fed. R. Civ. P. 8 requires that a pleading that states a claim for relief must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction. . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or

10

different types of relief." *Id.*

The elements to determine whether a spendthrift trust is valid that should be included in the complaint are: (1) whether the trust includes a spendthrift provision; (2) whether the trust names the settlor as a beneficiary; and (3) the extent of dominion and control a beneficiary possesses over the trust corpus. *See, e.g.*, *In re Matteson*, 58 B.R. 909, 911 (Bankr. D. Colo. 1986).

The Complaint sets forth each of these elements. For the bankruptcy court to have found that the Trust was an invalid spendthrift trust, it must have determined that the Trust was "created to provide a fund for the maintenance of the beneficiary, and at the same time to secure it against his improvidence or incapacity." *Newell v. Tubbs*, 103 Colo. 224, 227, 84 P.2d 820, 821 (1938); *see also*, *Black's Law Dictionary* at 1518 (7th ed.1999) (A spendthrift trust is one "that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest.").

Paragraph 3.6 of the Trust document provides: "The interests of beneficiaries in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily alienated or encumbered." *Id.* at 20. This provision meets the requirements of *Newell v. Tubbs*, *supra*. The Trust protects against the beneficiaries against improvident borrowing, marriage, and against legal process. Accordingly, the Trust is a spendthrift trust which, if valid, would be exempt under 11 U.S.C. § 541(c)(2).

Second, the Complaint states that the Trust names Bryan and Mrs. Bryan as settlors and beneficiaries. ("The Trust settlors are the Debtor [Bryan] and Ms. Bryan"

(*Id.* at ¶ 16) and "[t]he Trust beneficiaries are the Debtor, Ms. Bryan and their two children: Blake Berlin Bryan and Oliver Madison Bryan." *Id.* at 17; *see also*, Tr. 4/2/2009 at 56, ll. 11–23, 82, l. 19–25; ECF No. 123; Compl.¶ 70, ECF No. 1.).

Third, in the Complaint, the Trustee claims that Bryan had dominion and control over the trust corpus. *Id.* at ¶ 71.

These assertions set forth the elements of a claim to invalidate a spendthrift trust. A failure to use the word "spendthrift," is not fatal when each of the elements of a spendthrift trust has been set forth clearly in the complaint to constitute a short plain statement of the claim. Accordingly, in the Complaint, Trustee sufficiently states his claim under Fed. R. Civ. P. 8.

B. <u>Implied Consent to Raising Issue of Spendthrift Trust.</u>

Bryan argues that the issue of the spendthrift trust was not tried by express or implied consent. Trustee argues that, even if he had not properly presented the spendthrift trust issue in the Complaint and Joint Pretrial Statement (ECF No. 72), Bryan consented to his raising the issue when he failed to object to the Trustee's presentation of evidence of an invalid spendthrift trust when it was presented.

In this circuit, a litigant "impliedly consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence." *Green Country Food Mkt., Inc. v. Bottling Grp, LLC,* 371 F.3d 1275, 1280 (10th Cir. 2004). The purpose of the timely objection requirement is to ensure that "the nature of the error was called to the

12

attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take proper corrective measures." *In re Blatzer*, 2010 WL 445062 (10th Cir. (Feb. 8) 2010) (citing *Sorensen v. City of Aurora*, 984 F.2d 349, 355 (10th Cir. 1993)). The Tenth Circuit Court of Appeals has held that evidentiary objections must generally be made when the evidence is offered. *Pandit v. Am. Honda Motor Co., Inc.*, 82 F.3d 376, 379 (10th Cir.1996) (requiring contemporaneous objection so a definitive ruling can be made).

The Bryans did not object at any point to the inclusion of testimony or argument supporting the spendthrift nature of the Trust, even after the Bankruptcy Court granted its Motion for Reconsideration of Order Denying Motion for Summary Judgment (ECF No. 89). I conclude that the bankruptcy court did not err in determining that the Bryans consented to the trial of the issue of the validity of the spendthrift trust.

II. Whether the Bankruptcy Court erred in concluding that the Trust is not a valid spendthrift trust when the issue was not included in the pretrial statement of claims and defenses.

The joint pretrial statement and the pretrial order control the course of litigation. *See* Fed. R. Civ. P. 16(e) and (f); Fed. R. Bankr. P. 7016; *see also*, *In re Dawson*, 411 B.R. 1 (Bkrtcy D. Colo. 2008). The pretrial order supersedes the pleadings and controls the case. *In re Miner*, 369 B.R. 655, 672 (Bankr. D. Kan. 2007) (holding Miners were not limited to seeking statutory damages claimed in complaint where pretrial order provided general list of remedies, including actual and statutory damages); *see also*, *In re Hollister*, 247 B.R. 485, 493 n.14 (Bkrtcy. W.D. Okla. 2000) (deeming waived

counterclaim raised in Answer but excluded from Agreed Pre-Trial Order); *see also*, "[W]hile the pre-trial order should measure the dimensions of a lawsuit and govern its course in the absence of some good reason for departure, this does not mean that the order should not be liberally construed to embrace all of the legal and factual theories inherent in the issues defined therein." *Century Refining Co. v. Hall*, 316 F.2d 15, 20 (10th Cir. 1963); *see also*, *Lohmann & Rauscher, Inc. v. YKK (U.S.A.) Inc.*, 477 F. Supp. 2d 1147, 1151–52 (D. Kan. 2007) ("The Pretrial Order should 'be liberally construed to cover any of the legal or factual theories that might be embraced by their language.'").

In the Joint Pretrial Statement, Trustee sets out the elements of an invalid spendthrift trust:

> [T]he Trust Agreement is void and of no effect under Colorado law because the Debtor is both the Trust settlor and a beneficiary with substantial control over the disposition of the purported Trust assets in violation of C.R.S. § 38-10-111.

*Id.* at Part I(A)(1)(a) at 3, ECF No. 72. It also sets forth the elements of a trust that is a sham on the basis of its operation, as set forth in *In re Baum*, 22 F.3d 1014, 1018 (10th Cir. 1994):

> Debtor is both the Trust settlor and a beneficiary with substantial control over the disposition of the purported Trust assets in violation of C.R.S. § 38-10-111 ["Trusts for use of grantor void against creditors"]. The Debtor's control over the Trust is shown, by among other actions, (a) the numerous transfers of the Property in and out of the Trust from 2001 through 2005; (b) the significant cash received by the Debtor and/or Ms. Bryan from the various refinances and the HELOC; and (c) the existence of a Trust Certificate granting the Debtor unlimited authority to pledge any and all Trust assets as security for any indebtedness of Debtor.

*Id.*

The Joint Pretrial Statement's characterization of Trustee's spendthrift trust claim embraces the legal and factual theories sufficiently to put the Bryans on notice that Trustee expected to prove that the Trust was invalid: (1) based on Colo. Rev. Stat. § 38-10-111 because Bryan was the beneficiary and the settlor of the Trust, (2) because the Trust is an ineffective spendthrift trust, and (3) the Trust is a sham. Accordingly, the issue was preserved for trial.

III.    Whether the Bankruptcy Court Erred in Ruling that the Trust as a Whole is Invalid under Colorado Law and is Part of the Estate because the Spendthrift Clause is Not Enforceable.

This issue focuses on whether the Trust is a valid spendthrift trust or merely a sham. A sham trust is one where the debtor (1) retains too much control over the trust property; (2) ignores legal formalities; and (3) uses the property as his own. *In re Baum*, 22 F.3d at 1018. When the debtor "uses the property as his own, the property is treated as owned by the transferor rather than the entity that is the nominal owner." *Id.* If "trusts are shams or otherwise void under Colorado law the trust property is includable in the bankruptcy estate." *Id.* at 1017. A decision that a trust is a sham entity is a question of fact, which I review for clear error. *See United States v. Cumberland Pub. Serv. Co.*, 338 U.S. 451, 454 (1950).

As summarized above, the Trust property was treated as Bryan's own almost from the beginning. Over the years, the Bryans exercised dominion and control in repeatedly quit claiming the One Finch Property from the Trust to themselves and back again. Moneys were borrowed using the Trust property as security, yet the loan funds were used for personal purposes. Leases were prepared, yet rent was not paid to the

15

Trust while the Bryans lived in the Trust property.

Bryan ignored the legal formalities of the Trust. An example is Mrs. Bryan's letter of January 21, 2005 (ECF No. 1-10) to the Trustee explaining the purpose for the "cash out" from the most recent refinance, after the fact. *Id.* Another is her May 11, 2005 letter (ECF No. 1-16) in which she informs the Trust's trustee (Mr. Hunt) of recent financial transactions that the Trust trustee had approved, without the his participation in the decisions. *See id.*

Not only did the Bryans treat the Trust property as their own, the Trust Certificate was prepared to authorize the trustee "[t]o mortgage, pledge, transfer, . . . all real property and all personal property (tangible or intangible) of Trust, as security for the payment of any loans, any promissory notes, or any other indebtedness of GARY L. BRYAN to Lender [Vectra Bank of Colorado] at any time owing, however the same may be evidenced." Trust Cert., ECF No. 1-7. The Trust Certificate was never revoked. Tr. at 165, l. 9–166, l. 4, ECF No. 123.

Based on this record, the Bankruptcy Court's factual findings are not clearly erroneous. The Bankruptcy Court did not err in ruling that the Trust was a sham and that all of its assets are part of the Estate.

IV. Whether the Bankruptcy Court erred in concluding that the imposition of a constructive trust as a remedy was correct, when all fraudulent transfer claims had been denied on summary judgment.

The Bankruptcy Court granted the Trustee's Twelfth Claim for Relief that a constructive trust be imposed over the proceeds from the sale of the Range Rover and

16

over the One Finch Property because "the transfer of the Debtor's property interests to the Trust were made with the intent to delay and hinder his creditors." Mem. & Op. Part V(E), ECF No. 95. Bryan argues that the court erred in granting this relief because the underlying claims of fraudulent transfer (Claims for Relief 4 through 11) had been previously dismissed. Trustee's response is limited to arguing that the constructive trust was imposed by the court merely as a remedy for the sham trust. *See Mancuso v. United Bank*, 818 P.2d 732, 737 (Colo. 1991) ("In general, a constructive trust is imposed . . . because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." *Id.*).

Trustee's position is inconsistent with the plain language of the Complaint and the Joint Pretrial Statement, which specifically tie the constructive trust request to the fraudulent transfer claims previously dismissed.[4]

---

[4] Trustee's Twelfth Claim for Relief states:

> 140. The Trustee incorporates by this reference the statements and allegations contained in paragraphs 1 through 139 as though more fully set forth herein.
>
> 141. Defendants Janel Bryan, Auto Source, LLC and Brad Hunt each received improper transfers of funds and other property from the Debtor that were rightful property of the Debtor.
>
> 142. By <u>virtue of the fraudulent nature of such transfers</u>, said Defendants now hold such funds and other property, rightful the property of the estate, as constructive trustees for the benefit of the estate, and such constructive trust should be imposed by the Court.

The Fourth through Eleventh Claims for Relief were each based on fraudulent transfers to Mrs. Bryan, Auto Source, LLC, and Mr. Hunt, and Trustee did not make any other fraudulent transfer claims. The Twelfth Claim for Relief refers to the fraudulent transfers alleged in the Fourth through Eleventh Claims for Relief. I conclude that the constructive trust prayer was inextricably tied to the dismissed claims and not to the turn over claims. Accordingly, the Bankruptcy Court erred in imposing a constructive trust on the Trust property.

V. Whether the Bankruptcy Court erred in concluding that Plaintiff is entitled to offset a judgment of $52,001.23 allegedly owed by Mrs. Bryan against any funds to be distributed to her, when the referenced judgment was entered against Vectra Bank rather than Mrs. Bryan. *See* Opening Br. at 1–2. ECF No. 11.

Bryan argues that the Bankruptcy Court erred in offsetting the judgment against Mrs. Bryan's one-half interest in the sale proceeds of the One Finch Property. Trustee

---

> WHEREFORE, The Trustee respectfully requests that the Court enter judgment in his favor and against Defendants Janel Bryan, Auto Source, LLC and Brad Hunt , (a) imposing a constructive trust as set forth herein and (b) granting such other relief as the Court deems appropriate.

Compl. ¶¶ 140–142, ECF No. 1 (emphasis added).

The Joint Pretrial Statement states:

> In his Twelfth Claim for Relief, the Trustee asserts that, as a result of the Debtor's fraudulent conduct, including the conduct set forth in paragraphs (I)-(x) in Section I.A.1.a, above, all of the transfers of funds and other property alleged in the complaint were improper transfers of the Debtor's property. The Trustee therefore seeks imposition of a constructive trust against each and every Defendant holding the [One Finch] Property or the proceeds of the sale of the Vehicle.

*Id.*, Part A(1)(f), ECF No. 72.

18

concedes that it was error for the Court to rule that, after selling the One Finch Property, "the Trustee may offset the judgment of $52,001.23 owed by Mrs. Bryan on the Eighth and Ninth Claims for Relief against Mrs. Bryan's one-half share of the net proceeds of sale." Resp. at 9 (citing App. at 183, ECF No. 95), ECF No. 20 (09cv1366). Trustee states that the inclusion of this language was a scrivener's error that should have been stricken in the Bankruptcy Court's final order. *See* Trustee's Resp. at 6, ECF No. 20. Accordingly, the Bankruptcy Court's ruling reflected in Bryan's Fifth Issue on Appeal shall be reversed and remanded for findings and conclusions with this order.

## CONCLUSION

In sum, I affirm the Bankruptcy Court's holding that, based upon the pleadings and trial, the Trust is a sham under Colorado law, its spendthrift clause is not enforceable, and therefore the Trust assets are assets of the bankruptcy Estate. I reverse the Bankruptcy Court's imposition of a constructive trust and the offset and remand to the Bankruptcy Court for further proceedings consistent with this opinion.

DATED at Denver, Colorado, this 29th day of September, 2010.

BY THE COURT

_____

Walker D. Miller
Senior United States District Judge